**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GERALD VON TOBEL,
　　　　　*Petitioner-Appellant*,

　　　　v.

JAMES BENEDETTI; ATTORNEY
GENERAL FOR THE STATE OF
NEVADA,
　　　　　*Respondents-Appellees.*

No. 18-15892

D.C. No.
3:10-cv-00073-
LRH-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted December 2, 2019
San Francisco, California

Filed September 14, 2020

Before: Eugene E. Siler,[*] Jay S. Bybee, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Siler

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel withdrew a memorandum disposition filed January 9, 2020; filed a published opinion affirming the district court's denial of Nevada state prisoner Gerald Von Tobel's habeas corpus petition; denied a petition for rehearing; and denied on behalf of the court a petition for rehearing en banc, in a case in which a juror, during the trial, had a conversation with a police-officer neighbor who told the juror something to the effect that a defendant in a criminal trial would not be there if he had not done something wrong.

Von Tobel contended that the test used by the Nevada Supreme Court to evaluate juror misconduct in his case was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), because it placed a more onerous burden on him to prove prejudice than under the applicable Supreme Court precedent and because it did not presume that the contact was prejudicial.

The panel observed that there was no decision of the United States Supreme Court that precludes the Nevada Supreme Court from requiring the petitioner to show a reasonable probability or likelihood that the contact affected the verdict. Applying AEDPA's highly deferential standard, the panel therefore concluded that the Nevada Supreme

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Court's test to evaluate juror misconduct—and the application of it in this case—is not contrary to, nor does it involve an unreasonable application of, clearly established Federal law.

## COUNSEL

Kimberly Sandberg (argued), Jonathan Kirshbaum, and Ryan Norwood, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellant.

Natasha M. Gebrael (argued) and Ashley A. Balducci, Deputy Attorneys General; Aaron D. Ford, Attorney General, Office of the Attorney General, Las Vegas, Nevada; for Respondents-Appellees.

## ORDER

The memorandum disposition filed January 9, 2020 is withdrawn. A published opinion authored by Judge Siler is filed concurrently with this order.

The panel judges have voted to deny appellant's petition for rehearing.

Judge R. Nelson voted to deny the petition for rehearing en banc, and Judges Siler and Bybee recommended denying the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Appellant's petition for rehearing and petition for rehearing en banc, filed March 24, 2020, is **DENIED**.

---

## OPINION

SILER, Circuit Judge:

Gerald Von Tobel, a Nevada state prisoner, appeals from the district court's denial of his petition for a writ of habeas corpus. During Von Tobel's trial, one of the jurors had a conversation with a neighbor who is a police officer about difficulties the juror was having in the case. Sometime during the conversation, the police officer neighbor told the juror something to the effect that a defendant in a criminal trial would not be there if he had not done something wrong.

In evaluating this contact on direct appeal, the Nevada Supreme Court applied its own test for evaluating juror misconduct and concluded that Von Tobel had not met his burden to show prejudice. In his petition for a writ of habeas corpus, Von Tobel contends that the test used by the Nevada Supreme Court to evaluate juror misconduct in his case was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), because it placed a more onerous burden on him to prove prejudice than under the applicable Supreme Court precedent and because it did not presume that the contact was prejudicial. We hold that the Nevada Supreme Court's test to evaluate juror misconduct—and the application of it in Von Tobel's case—is not contrary to, nor does it involve

an unreasonable application of, clearly established Federal law and we affirm the district court's denial of Von Tobel's habeas petition.

## I.

Von Tobel was convicted in 2005 of numerous counts of physical and sexual abuse of his girlfriend's three children. At trial, the only direct evidence of abuse was the testimony of the children. Their testimony included some inconsistencies, such as not remembering incidents of abuse that they had previously disclosed. Von Tobel testified and denied the allegations.

The jury deliberated across four days for a total of around twenty hours. During deliberations, the jury sent several notes to the judge indicating they were having trouble reaching a verdict on some of the charges. Each time the judge instructed them to continue deliberating. The jury eventually reached a unanimous verdict on all counts, finding Von Tobel guilty on twenty-five counts (one of which was not guilty but guilty of a lesser offense) and not guilty on one count.[1]

After the jury was released, the judge invited them to "stay and chat" with the attorneys to "discuss the case." When asked what factors in the case had an impact on the verdict, Juror No. 200 stated: "It's like my neighbor, who is a cop, always says, '[h]e wouldn't be here if he didn't do something.'" This comment resulted in a motion for a new trial and an evidentiary hearing.

---

[1] In addition, one count had been previously withdrawn by the State.

At the evidentiary hearing, Juror No. 200 was called as a witness. He clarified that the conversation with his neighbor occurred during trial, prior to deliberations. Juror No. 200 said that he barely knew his neighbor and that he believed that his neighbor worked for a different police department than the one involved in the case. Juror No. 200 explained that the conversation with his neighbor occurred when he went out to the community mailbox in his neighborhood and ran into his neighbor. He told the neighbor "[y]ou know, I don't know how you put up with this stuff that you have to do with." The neighbor replied "oh[] [i]t's just [what] you have to do." Juror No. 200 then said that he was on jury duty and having a tough time because "stuff that's going on here that just makes me sick. Matter of fact, I have a hard time sleepin' with it as a result of it." During the conversation, the neighbor told Juror No. 200 about an unrelated case in a different jurisdiction where "a kid got killed in a gang something or other" and some people had already "plead out [and were] serving time while others were waiting to go to Court." Sometime during the conversation—Juror No. 200 does not remember when—the neighbor said something to the effect of "if they're here, they're here for a reason" or that "[h]e wouldn't be here if he didn't do something."

During the evidentiary hearing, Juror No. 200 stated that he: (1) understood the presumption of innocence and that it applied to Von Tobel; (2) did not make up his mind about Von Tobel's guilt before deliberations; and (3) changed his mind several times about Von Tobel's guilt during deliberations. Regarding the conversation with his neighbor, Juror No. 200 said that: (1) it did not affect his ability to keep an open mind while hearing the evidence; (2) he did not conclude from his neighbor's comment that Von Tobel must have done something otherwise he would not be in court;

and (3) the conversation had no influence on his thought process, on how he viewed the evidence, or on the verdict.

The court found that Juror No. 200 violated the court's order not to discuss the case. But the court denied Von Tobel's motion for a new trial, explaining that Juror No. 200 "never swayed in his belief that he was obligated to listen to the facts and the evidence in this case, and render a verdict only after he listened to all of the witnesses, saw all of the evidence, and began deliberation with his fellow jurors." The court added that Juror No. 200 "never wa[i]vered with respect to the presumption of innocence," did not have a preconceived idea about Von Tobel's guilt, and that the conversation with his neighbor "did not affect his belief or reliance upon the presumption of innocence." Finally, the court concluded that there was no evidence that Juror No. 200 discussed the nature of the case with his neighbor, or that the conversation had any influence on the determination of guilt or on the presumption of innocence.

On appeal, the Nevada Supreme Court conducted a de novo review of the trial court's decision. The test for allegations of juror misconduct in Nevada comes from *Meyer v. State*, 80 P.3d 447 (Nev. 2003). Under it, a motion for a new trial based on allegations of juror misconduct has the burden to show that (1) the misconduct occurred and (2) the misconduct prejudiced the defendant. *Id.* at 455. When the misconduct is egregious, the Nevada Supreme Court applies a conclusive presumption of prejudice without any showing of prejudice. *Id.* When the misconduct is not egregious, the defendant must prove prejudice by showing that, in reviewing the trial as a whole, there was "a reasonable probability or likelihood that the juror misconduct affected the verdict." *Id.* at 456.

The Nevada Supreme Court found that Juror No. 200 committed misconduct. *Von Tobel v. State*, No. 45684, at \*3 (Nev. Feb. 29, 2008).  But it determined that this was not an egregious case—triggering the conclusive presumption of prejudice—because Juror No. 200 did not discuss the facts of the case with his neighbor. *Id.*  As a non-egregious case, Von Tobel had the burden to show prejudice. *Id.*  The Nevada Supreme Court concluded that Von Tobel failed to show a reasonable probability that exposure to the neighbor's opinion affected the verdict because: (1) the conversation did not include any details of the case; (2) jury instructions occurred after the conversation; and (3) the jury was instructed on the presumption of innocence and jurors are presumed to have followed the judge's instructions. *Id.* at 4–5.

Von Tobel filed a habeas petition in the district court arguing that the Nevada Supreme Court's test from *Meyer*— both itself and as applied here—was contrary to clearly established federal law.  Specifically, we have held that a test derived from two Supreme Court cases from 1892 and 1954 constitutes clearly established federal law for evaluating a juror's contact with an outside party. *Godoy v. Spearman*, 861 F.3d 956, 964 (9th Cir. 2017) (en banc); *see Remmer v. United States*, 347 U.S. 227 (1954); *Mattox v. United States*, 146 U.S. 140 (1892).  Thus, Von Tobel contended that the *Meyer* test itself and as applied to him was contrary to, or an unreasonable application of, *Mattox* and *Remmer* because it placed a more onerous burden on him to prove prejudice and it did not presume that Juror No. 200's contact with his neighbor was prejudicial.

The district court reviewed the burden on the defendant under *Meyer* and under *Mattox/Remmer* and found them similar enough that *Meyer* was not clearly contrary to

*Mattox/Remmer*.   The district court also found that no contrary decision of the Supreme Court prevented the Nevada Supreme Court from concluding that Juror No. 200's contact with his neighbor was non-egregious—thus not triggering a presumption of prejudice.   Finally, the district court noted that *Godoy* approvingly cited *Tarango v. McDaniel*, 837 F.3d 936 (9th Cir. 2016)—and a footnote in *Tarango*, 837 F.3d at 950 n.13, can be read as suggesting that that the *Meyer* test is compatible with clearly established federal law—undercutting the contention that at the time of the Nevada Supreme Court's decision in 2008, *Meyer* was clearly incompatible with *Mattox/Remmer*.

## II.

A district court's denial of a petition for habeas corpus under 28 U.S.C. § 2254 is reviewed de novo. *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000).   A federal court cannot grant a petition for habeas corpus to a prisoner in state custody for a claim that was adjudicated on the merits in state court unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).   A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."   *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).   "An unreasonable application of clearly established federal law must be 'objectively unreasonable, not merely wrong; even clear

error will not suffice.'" *Rowland v. Chappell*, 876 F.3d 1174, 1181 (9th Cir. 2017) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). Rather, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Woodall*, 572 U.S. at 419–20). "If Supreme Court precedent does not provide a 'clear answer to the question presented,' the state court's decision cannot be contrary to, or have unreasonably applied, clearly established federal law." *Turner v. McEwen*, 819 F.3d 1171, 1176 (9th Cir. 2016) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam)).

We review "the last reasoned state court decision to address the claim[s]." *White v. Ryan*, 895 F.3d 641, 665 (9th Cir. 2018). Here, the last such decision is the Nevada Supreme Court's denial of Von Tobel's direct appeal.

## A.

After the Nevada Supreme Court's decision in this case, this court recognized that a two-part test derived from two Supreme Court cases—*Remmer* and *Mattox*—constitutes clearly established federal law for analyzing improper contacts between jurors and outside parties. *See Godoy*, 861 F.3d at 964. Von Tobel contends that the test from *Meyer*, used by the Nevada Supreme Court to evaluate the contact between Juror No. 200 and his neighbor is contrary to, or an unreasonable application of, the *Mattox/Remmer* test. It is not.

The Nevada Supreme Court did not use the *Mattox/Remmer* framework to analyze the contact between Juror No. 200 and his neighbor. Neither case is cited in its

opinion, but this is not required. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Instead, it applied its own test for analyzing juror misconduct, such as a juror's having contact with a third-party, which it developed in *Meyer*.[2] Under *Meyer*, the defendant must show that the misconduct (1) occurred and (2) prejudiced him. 80 P.3d at 455. To show prejudice, the defendant must show that "there is a reasonable probability or likelihood that the juror misconduct affected the verdict." *Id.* In egregious cases, such as jury tampering, prejudice is conclusively presumed without the defendant's having to show prejudice; in non-egregious cases, the defendant has the burden to show prejudice. *Id.* at 455–56.

Because of the obvious structural differences between these two tests, we begin by comparing them before considering the defendant's burden under each. The first step of the *Meyer* test—that the misconduct occurred—is not explicitly part of the *Mattox/Remmer* framework. Instead it is an implicit "step zero" in the analysis because *Mattox/Remmer* step one presupposes that there was a contact, since it asks "whether the contact was 'possibly prejudicial.'" *See Godoy*, 861 F.3d at 962 (quoting *Mattox*, 146 U.S. at 150). Thus, *Meyer* step one is consistent with the *Mattox/Remmer* framework.

The second step of *Meyer*—that the misconduct prejudiced the defendant—differs depending on whether the extrinsic influence on the juror was egregious or not. If egregious, prejudice is conclusively presumed and the defendant does not have to make any showing of prejudice. *Meyer*, 80 P.3d at 455. If not egregious, the burden is on the

---

[2] *Meyer* cites to *Remmer* but not *Mattox*. *See Meyer*, 80 P.3d at 455 n.23, n.26.

defendant to show "a reasonable probability or likelihood that the juror misconduct affected the verdict." *Id.* *Meyer* step two, then, is analogous to *Mattox/Remmer* step one as they both ask whether there was prejudice. *Meyer*'s placing the burden on the defendant to show prejudice is consistent with *Mattox/Remmer*. *See Remmer*, 347 U.S. at 228–29 (not specifically addressing who has the burden but stating that the defendant submitted evidence in support of his motion); *Mattox*, 146 U.S. at 142 (same); *see also Godoy*, 861 F.3d at 967 (stating that the defendant must present evidence of a prejudicial contact at step one).

Von Tobel contends that *Meyer* is contrary to *Mattox/Remmer* because it placed a more onerous burden on him to show prejudice. Von Tobel misreads *Meyer*. *Meyer* only requires the petitioner to show "a reasonable probability or likelihood that the juror misconduct affected the verdict" in order to prevail on a motion for a new trial. 80 P.3d at 455. The Nevada Supreme Court had defined a reasonable probability as a "probability sufficient to undermine confidence in the outcome." *Lobato v. State*, 96 P.3d 765, 772 (Nev. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In *Godoy*, we described the petitioner's burden under *Mattox/Remmer* as requiring the petitioner to present "evidence of an external contact that has a tendency to be injurious to the defendant" or "evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case." 861 F.3d at 967 (internal quotation marks and citations omitted). "[A] probability sufficient to undermine confidence in the outcome," *Lobato*, 96 P.3d at 772, is similar to "rais[ing] a credible risk of affecting the outcome," *Godoy*, 861 F.3d at 967. And, most importantly, neither *Mattox* nor *Remmer* precisely delineates the petitioner's burden. So, even if the burdens under *Meyer* and *Godoy* are different, there was no

decision of the Supreme Court that precludes the Nevada Supreme Court from requiring the petitioner to show a reasonable probability or likelihood that the contact affected the verdict. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam) (stating that Supreme Court cases must give a "clear answer to the question presented" to be clearly established federal law).

## 1.

We emphasize that what we have said beyond what the Supreme Court has held to "refine or sharpen" a defendant's burden is not clearly established Federal law. *Lopez v. Smith*, 574 U.S. 1, 7 (2014) (per curiam) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam)). Our various formulations of *Mattox/Remmer* step one to require that the contact "raise[] a risk of," *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 697 (9th Cir. 2004), "raise a credible risk of," *Tarango*, 837 F.3d at 947, or be "sufficiently improper as to raise a credible risk of," *Godoy*, 861 F.3d at 967, "influencing the verdict" or "affecting the outcome of the case," *Godoy*, 861 F.3d at 967, do not appear in *Mattox/Remmer* or any Supreme Court precedent and are thus not clearly established Federal law. *See Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam). As a result, Von Tobel cannot invoke our more precise formulations of the defendant's burden to claim that the Nevada Supreme Court's formulation is more onerous than our formulation, and thus contrary to *Mattox/Remmer*. *See id.*; *Smith*, 574 U.S. at 6–7.

*Mattox* does not make clear how much of a "tendency. . . [to be] injurious to the defendant" is required; that is, how certain or likely prejudice has to be for the defendant to meet his burden. 146 U.S. at 150. As a result, a defendant's burden under *Meyer* falls within the range allowed by

Supreme Court precedent.  There is no clearly established
Supreme Court precedent which holds that a defendant's
burden to show that a contact was "possibly prejudicial" is
less onerous than "a reasonable probability or likelihood that
the juror misconduct affected the verdict," *Meyer*, 80 P.3d at
455, or "a probability sufficient to undermine confidence in
the outcome," *Lobato*, 96 P.3d at 772 (quoting *Strickland*,
466 U.S. at 694).

Our cases further articulating the defendant's burden
confirm this conclusion.  We believe our explanations of the
defendant's burden under *Mattox/Remmer* are consistent
with, and faithful interpretations of, Supreme Court
precedent.  In explaining the defendant's burden, we have
repeatedly recognized the contribution that *Smith v. Phillips*,
455 U.S. 209 (1982), has made to the *Mattox/Remmer*
framework at step one.**[3]**  *See Caliendo*, 365 F.3d at 696; *see
also Clark v. Chappell*, 936 F.3d 944, 970 (9th Cir. 2019);
*Godoy*, 861 F.3d at 967; *Tarango*, 837 F.3d at 947.  Our
cases addressing the defendant's burden largely focus on
incorporating *Phillips* into step one of the framework.  *See
Clark*, 936 F.3d at 944 (citing *Phillips* before concluding that
a defendant is required to show a "sufficiently improper"
contact that "gives rise to a 'credible risk of affecting the
outcome of the case'" (quoting *Godoy*, 861 F.3d at 967));
*Godoy*, 861 F.3d at 967 (reviewing *Phillips* before
formulating the defendant's burden as requiring the

---

**[3]** That *Phillips* affected the *Mattox/Remmer* framework is consistent
with our statement in Godoy that "[*Phillips*] left *Mattox* and *Remmer*
intact."   *Godoy*, 861 F.3d at 964 n.3.   In that footnote, we were
considering whether the *Mattox/Remmer* two-step framework continued
to exist post-*Phillips*.  *Id.*  We held that the framework still existed.  *Id.*
We certainly did not hold that *Phillips* had no effect on the framework
in the footnote, as we also relied on *Phillips* to clarify the defendant's
step-one burden.  *Id.* at 967.

defendant to "present evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case"); *Tarango*, 837 F.3d at 936 (noting *Phillips* before concluding that "'prosaic kinds of jury misconduct' do not trigger a presumption of prejudice" (quoting *Dutkel*, 192 F.3d at 894–95)); *Caliendo*, 365 F.3d at 696–97 (reviewing *Phillips* and another case as support for the conclusion that a defendant must show that the contact "raises a risk of influencing the verdict"). After providing several variations of the defendant's burden, in *Godoy* we settled on requiring a defendant to show that the contact was "sufficiently improper as to raise a credible risk of affecting the outcome of the case," or of "influencing the verdict." *Godoy*, 861 F.3d at 967, 970. Our standard thus falls between requiring more than a theoretical possibility of prejudice and less than actual prejudice.

The burden under *Meyer* is not contrary to *Mattox/Remmer*. Indeed, it is nearly identical to our formulation of *Mattox/Remmer*. Both tests look at the effect of the contact on the verdict or outcome. *Compare Meyer*, 80 P.3d at 455 (whether the contact "affected the verdict"); *and Lobato*, 96 P.3d at 772 (whether the contact "undermine[d] confidence in the outcome"); *with Godoy*, 861 F.3d at 967 (whether the contact has a risk of "influencing the verdict" or "affecting the outcome of the case" (quoting *Tarango*, 837 F.3d at 947)). And both tests require a similar level of certainty that there was prejudice. *Compare Meyer*, 80 P.3d at 455 ("reasonable probability or likelihood") *and Lobato*, 96 P.3d at 772 ("a probability sufficient to"); *with Godoy*, 861 F.3d at 967 ("sufficiently improper as to raise a credible risk").

## 2.

Von Tobel's reliance on the relationship between the defendant's burden under *Meyer* and the test from *Strickland* is misplaced. *Meyer* requires a defendant to show "a reasonable probability or likelihood that the juror misconduct affected the verdict," *Meyer*, 80 P.3d at 455, and the Nevada Supreme Court's definition of a "reasonable probability" comes from *Strickland*. Because the Supreme Court has said that "[s]urmounting *Strickland*'s high bar is never an easy task," *Padilla*, 559 U.S. at 371, Von Tobel argues that his burden under *Meyer* must also be a "high bar," and thus is contrary to the "low threshold" under *Mattox/Remmer*. To begin with, although we have said that the defendant's burden under *Mattox/Remmer* is a "low threshold," that description is our own and not attributable to the Supreme Court. *Caliendo*, 365 F.3d at 697 (stating that "the *Mattox* rule applies when an unauthorized communication with a juror crosses a low threshold to create the potential for prejudice" without citing to any Supreme Court precedent for that description). But even if it were, we cannot say that the burden under *Meyer* is inconsistent with this pronouncement.

The principal problem with Von Tobel's *Strickland* argument is that he conflates the *Strickland* test as a whole with a part of it. To establish ineffective assistance of counsel under *Strickland*, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). On the deficient performance prong, a defendant must show that his or her "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. On the prejudice prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Nevada Supreme Court's definition of "reasonable probability" is the same and that definition comes from *Strickland*. *See Lobato*, 96 P.3d at 772. But it is not the "reasonable probability" standard in the prejudice prong that makes "[s]urmounting *Strickland*'s high bar [] never an easy task." *Padilla*, 559 U.S. at 371. Rather, the highly deferential review courts are to give counsel's performance and the likelihood that attorney error would be harmless in a particular case make it difficult to surmount. *See id.* at 371–72 (citing these parts of the *Strickland* test as support for the statement that *Strickland* is a high bar). Thus, on the prejudice prong, it is not the requirement that the defendant show a "reasonable probability" that makes it hard to meet; instead, it is what the defendant must show a "reasonable probability" *of*—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694. Thus, it is the other parts of the test and the test as a whole, not the reasonable probability standard, which makes *Strickland* such a high standard. As a result, that the definition of reasonable probability originates from *Strickland* does not lead to the conclusion that the defendant's burden is not a low threshold or that the defendant's burden must be contrary to *Mattox/Remmer*.

Therefore, under AEDPA's "highly deferential standard," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)), we cannot say that requiring the petitioner to show "a reasonable probability or likelihood that [the contact] affected the verdict" is contrary to, or involves an

unreasonable application of, Supreme Court precedent, *Van Patten*, 442 U.S. at 126.

## B.

Even considering Von Tobel's argument without his having conflated the two presumptions of prejudice—that the Nevada Supreme Court unreasonably applied *Mattox/Remmer* in his case because it did not find that he had met his step one burden to show possible prejudice—he cannot meet his burden under AEDPA to show that *Mattox/Remmer* were unreasonably applied. *See Rowland*, 876 F.3d at 1181 (requiring a state court prisoner to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting *Woodall*, 572 U.S. at 419–20)). We have provided that, to determine whether the defendant has met his or her burden to show possible prejudice, courts can consider a variety of factors, including: (1) whether the communication concerned the case; (2) the length and nature of the contact; (3) the identity and role at trial of the parties involved; (4) evidence of the actual impact on the juror; and (5) the possibility of eliminating prejudice through limiting instructions. *Caliendo*, 365 F.3d 697–98; *see also United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993) (stating that a court can consider "the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source" in determining if the defendant has met his or her burden).

## C.

Von Tobel requests that we expand the certificate of appealability to include his claims of actual innocence and

ineffective assistance of counsel. *See* 28 U.S.C. § 2253(c)(1); 9th Cir. R. 22-1(e). We decline to do so because he has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

## III.

For these reasons, the district court correctly denied Von Tobel's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

**AFFIRMED**.