**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRACEY L. BROWN, | No.23-15594 |
| *Petitioner-Appellant*, | D.C. No. |
| v. | 2:19-cv-02000-JAD-DJA |
| ATTORNEY GENERAL FOR THE STATE OF NEVADA; RONALD OLIVER, | |
| | OPINION |
| *Respondents-Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted May 14, 2025
San Francisco, California

Filed June 12, 2025

Before: Carlos T. Bea and Ana de Alba, Circuit Judges, and
Jeffrey Vincent Brown,* District Judge.

Opinion by Judge Brown

---

* The Honorable Jeffrey Vincent Brown, United States District Judge for the Southern District of Texas, sitting by designation.

# SUMMARY[**]

## Habeas Corpus

The panel affirmed the district court's denial of Tracey Brown's 28 U.S.C. § 2254 habeas corpus petition in a case in which the panel addressed whether juror misconduct, in the form of an *ex parte* contact among a witness for the prosecution, her friend, and several jurors, deprived Brown of due process and a fair trial.

A Nevada jury found Brown guilty of multiple offenses. Brown moved for a new trial based on juror misconduct, which the trial court denied. The Nevada Supreme Court affirmed the convictions on direct appeal, relying on *Meyer v. State*, 80 P.3d 447 (Nev. 2003), to conclude that though juror misconduct had occurred, Brown failed to show prejudice.

The panel explained that the juror misconduct in this case—an unplanned encounter among a witness, an interested third party, and jurors during the trial—is neither prosaic nor egregious but falls squarely within the middle-ground of trial error.

Because the jury misconduct here was trial error, *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993), dictates a federal court's review of the Nevada Supreme Court's decision: whether the trial error had a substantial and injurious effect or influence on the verdict. Relief is proper only if the court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

has grave doubt about whether the error had that effect. The defendant must show the error resulted in actual prejudice.

The panel noted that this court has already held that *Meyer* does not violate clearly established Supreme Court precedent. Both *Meyer* and *Brecht* place the burden to show prejudice for non-egregious errors on the defendant. Accordingly, habeas relief is not warranted under 28 U.S.C. § 2254(d)(1) because the trial court complied with clearly established precedent when it (1) held a hearing where Brown could show prejudice and (2) denied Brown a new trial after evaluating the error, as developed at the hearing, in the context of the issues and evidence presented at trial. Nor is habeas relief warranted under 28 U.S.C. § 2254(d)(2), as the Nevada Supreme Court's decision was not the product of an unreasonable determination of facts based on the record before it.

## COUNSEL

Mark D. Eibert (argued), Law Office of Mark D. Eibert, Half Moon Bay, California, for Petitioner-Appellant.

Elsa Felgar (argued), Deputy Attorney General; Aaron D. Ford, Attorney General; Nevada Office of the Attorney General, Carson City, Nevada; for Respondents-Appellees

# OPINION

BROWN, District Judge:

Defendant-Appellant Tracey Brown appeals the denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. The issue is whether juror misconduct, in the form of an *ex parte* contact among a witness for the prosecution, her friend, and several jurors, deprived Brown of due process and a fair trial. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a) and (c), and we affirm.

## I.

From July 18–24, 2011, eight convenience-store robberies occurred in Las Vegas. In each instance, employees allege a black man with a half-covered face robbed them at gunpoint for cash and cigarettes, made them lie down, and fled the scene by car. A woman joined him in three of the robberies.

Brown was arrested for the robberies, and the State of Nevada charged him with 20 counts, including robbery, burglary, and kidnapping with use of a deadly weapon. Four victims identified Brown as the male assailant in a photo lineup. Seven victims identified the assailants in surveillance videos. At trial, eight victims testified. Two identified Brown in the courtroom as the male assailant. Two described Brown's eyes as distinctive. Surveillance videos revealing the assailants' uncovered faces were shown to the jury and admitted as evidence. Brown's girlfriend and co-defendant, Teshae Gallon, testified as the prosecution's final witness pursuant to a plea agreement. Gallon admitted to committing three of the robberies with Brown. She identified him in the courtroom and testified to his guilt in those three robberies.

After Gallon's testimony, the court released the jury for the weekend and told them not to discuss the case with outside parties. Eight jurors rode the elevator out of the courthouse. The door opened mid-ride to Gallon and her friend, who both recognized the jurors. They got on the elevator and had a brief but loud conversation between themselves.

Two jurors reported the *ex parte* contact with Gallon and her friend, and the court held a hearing to determine the conversation's substance, who heard it, and whether it would affect juror impartiality moving forward. Each juror was questioned individually. Their recollections varied. Several remembered the following: Gallon said, "Oh, that's the jury" when the doors opened; a juror told them it was okay to get on; the women entered reluctantly; and the friend told Gallon, "It doesn't matter, we're talking amongst ourselves," while Gallon remained silent. Juror #2 reported the incident and remembered it with the most detail. She testified that after the women got on the elevator, the friend said all the jury had to do was "look at the tapes and you'll see who it is" and that Gallon "told the truth." Juror #4 remembered Gallon's friend mentioning the video tapes. Six jurors recalled only that the friend talked about something Gallon wore on her head. The remaining jurors heard nothing, could not recall anything specific, or were not present. All jurors stated the incident would not affect their deliberations or verdict. The court found all jurors testified truthfully.

After the hearing, Brown moved for a mistrial. Everyone agreed juror misconduct had occurred, but the prosecution argued the misconduct did not prejudice Brown.[1] The court

---

[1] Brown makes much of the prosecution's initial statement that the incident prejudiced Juror #2 against Brown and it would be "wise to

agreed with the prosecution, finding that: (1) before the incident, the jury had already seen the surveillance videos referred to by the friend, (2) there was sufficient evidence to support the convictions apart from Gallon's testimony, and (3) most jurors heard nothing. Still, the trial court gave Brown a choice: keep the jury as-is or dismiss two jurors— Jurors #2 and #4—and swap in the alternates. Brown chose the former.

Trial continued. The court submitted the case to the jury with an instruction to disregard the conversation between Gallon and her friend. An hour later, the jury found Brown guilty on all counts. The court sentenced Brown to life with the possibility of parole after ten years.

Brown moved for a new trial by written motion. The court denied the request, citing Brown's "strategic decision not to use the alternates" that left the allegedly prejudiced jurors on the panel. The Nevada Supreme Court affirmed his convictions on direct appeal, relying on *Meyer v. State*, 80 P.3d 447 (Nev. 2003), to conclude that though juror misconduct had occurred, Brown failed to show prejudice.

After exhausting his state habeas petitions, Brown filed a petition for writ of habeas corpus in federal court under 28 U.S.C. § 2254. The district court denied the petition, and he appealed. We granted a certificate of appealability on the issue of whether juror misconduct deprived Brown of due process and a fair trial.

---

remove her from the jury." Trial counsel's legal conclusions, however, are not entitled to any deference from this court. And, in any case, the prosecution affirmed its position that the incident did not prejudice Brown several times throughout the trial record.

## II.

We review a district court's denial of habeas relief de novo. *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 694 (9th Cir. 2004). Allegations of juror misconduct and prejudice in habeas cases are also reviewed de novo. *Id.* Congress limits federal habeas relief to two scenarios: where the adjudicated state claim (1) contradicts or unreasonably applies "clearly established" Supreme Court precedent—not circuit court precedent—or (2) is based on an unreasonable determination of the facts presented in the state court proceeding. 28 U.S.C. § 2254(d); *Shoop v. Twyford*, 596 U.S. 811, 818–19 (2022). In doing so, the federal court reviews the "last reasoned opinion" of the highest-level state court. *Williams v. Johnson*, 840 F.3d 1006, 1009, 1011 (9th Cir. 2016).

Under § 2254(d)'s first prong,

> A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.

*Von Tobel v. Benedetti*, 975 F.3d 849, 854 (9th Cir. 2020) (cleaned up) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). In other words, federal habeas relief is unavailable if "fairminded jurists could disagree" on whether the state court was correct in its views and application of the Supreme Court's treatment of an issue of law. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). And under the second prong, federal courts must

give substantial deference to state courts' factual determinations. 28 U.S.C. §§ 2254(d)(2), (e)(1). Absent clear and convincing evidence, federal courts presume state court findings on the substance of an *ex parte* communication, the communications' effect on the juror, and juror credibility are correct. *Rushen v. Spain*, 464 U.S. 114, 120 (1983); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). But whether juror misconduct was prejudicial is a mixed question of federal law and fact reviewed de novo. *Dickson v. Sullivan*, 849 F.2d 403, 405–06 (9th Cir. 1988).

## III.

### A.

Brown argues that juror misconduct violated his Fifth, Sixth, and Fourteenth Amendment rights. Due process afforded by the Fifth and Fourteenth Amendments "means a jury capable and willing to decide the case solely on evidence" developed at trial, and a trial judge who guards against prejudicial occurrences and determines their effect. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The Sixth Amendment guarantees a criminal defendant a fair trial by a panel of impartial jurors who can "lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *Turner v. Louisiana*, 379 U.S. 466, 472 (1965). The presence of just one biased juror violates the Sixth Amendment. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1988) (en banc).

Because the Constitution does not require automatic reversal when constitutional error occurs, we must first classify the type of constitutional error that may have occurred. *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993). That classification will supply the clearly established

Supreme Court precedent governing our review. Only then may we decide whether the state court applied the law or determined the facts unreasonably under § 2254(d). Because the parties disagree at every juncture, we take each question in turn.

First, classifying the error below. Everyone agrees some level of juror misconduct happened here. But how severe was it? As we explain below, misconduct such as this—an unplanned encounter among a witness, an interested third party, and jurors during the trial—is neither "prosaic" nor "egregious" but falls squarely within the middle-ground of "trial error." To understand why requires explanation of each category of misconduct.

On one end of the spectrum are prosaic errors which are "so unimportant and insignificant" to be "deemed harmless." *Brecht*, 507 U.S. at 630 (citation omitted). Indeed, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation because it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen*, 464 U.S. at 118 (cleaned up) (citation omitted); *see, e.g.*, *id.* at 121 (juror's *ex parte* contact with judge not concerning "any fact in controversy or law applicable to the case"); *United States v. Dutkel*, 192 F.3d 893, 895 (9th Cir. 1999) (silent alternate jurors in deliberations, juror's job application with prosecutor, and juror's friends' encouragement to convict defendant); *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017) ("chance contacts between witnesses and jury members" like "passing in the hall or crowded together in an elevator" (citation omitted)).

On the other end of the spectrum are egregious errors, which "infect the entire trial process" and defy harmless-error review. *Brecht*, 507 U.S. at 629–30; *Arizona v. Fulminante*, 499 U.S. 279, 290, 308–11 (1991) (coerced confessions, denial of counsel, and partial judges are among the "structural defects" that "transcend the criminal process"). For example, jury tampering—"an effort to influence the jury's verdict by threatening or offering inducements"—is egregious. *Dutkel*, 192 F.3d at 895; *see, e.g.*, *Parker v. Gladden*, 385 U.S. 363, 363–65 (1966) (bailiff telling jurors defendant was wicked and guilty); *Turner*, 379 U.S. at 473 (deputies' continuous association with jurors before testifying); *Remmer v. United States*, 347 U.S. 227, 228–29 (1955) (bribing juror to find defendant not guilty). Egregious errors raise a presumption of prejudice, but not a conclusive one. *Remmer*, 347 U.S. at 229. The defendant's remedy is a hearing where the prosecution must establish the misconduct was harmless. *Id.* at 229–30.

Somewhere in the middle are "trial errors." *Brecht*, 507 U.S. at 629; *see, e.g.*, *Fulminante*, 499 U.S. at 307–08 (improper comments, erroneous admission of evidence, restriction on cross examination, charge error). Trial errors are "quantitatively assessed in the context of other evidence presented." *Brecht*, 507 U.S. at 629 (citation omitted). The reviewing court determines whether the extrinsic information the jury received had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citation omitted). This approach "focus[es] on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Fulminante*, 499 U.S. at 308 (citation omitted).

Brown complains of (1) jurors sharing an elevator with the witness and her friend, (2) several jurors' failure to report

it, (3) Brown's inability to cross-examine the friend, and (4) the jurors with the most detailed memories remaining on the panel that convicted him. He argues this amounts to jury tampering—egregious misconduct that should have raised a presumption of prejudice and required the government to show harmlessness. The government responds that only innocuous, prosaic misconduct occurred and it was Brown's burden to show prejudice. Neither is quite right.

What happened goes beyond prosaic misconduct. The jurors did not merely crowd together or shuffle by interested parties. *See Godoy*, 861 F.3d at 967. They invited a witness and her friend onto the elevator during trial, promised not to tell anyone about it, and allowed the women to openly converse. And not just any witness—Gallon was the sole co-defendant whose testimony the prosecution considered important enough to cut a deal for. Gallon was silent in the elevator, but the friend encouraged the jurors to believe Gallon and rely on the video evidence. Most jurors failed to report the incident as required by the court. Not ideal.

But it is not egregious either. Brief commentary from a stranger about evidence jurors had already seen does not "infect the entire trial process." *Brecht*, 507 U.S. at 629–30. The friend's statements regarding Gallon's testimony, emphasis on the videos, and comment about a head covering concerned facts which were duplicative of Gallon's testimony; jurors are presumed to ignore such statements. *See Rushen*, 464 U.S. at 121; *Dutkel*, 192 F.3d at 895 (presuming "jurors will disregard the advice of friends and ignore other *ex parte* contacts"). Neither Gallon nor her friend bribed or threatened any juror; in other words, no tampering occurred. *See Dutkel*, 192 F.3d at 895.

Thus, this type of error is best classified as trial error. The juror misconduct, committed before the close of evidence and days before deliberations, is simply an error in the trial process itself. Put simply, some jurors heard a few comments they should not have. Accordingly, the trial court could determine the harm, if any, resulting from this trial error only after (1) conducting a hearing and (2) evaluating the error alongside the issues and other evidence presented at trial. *Compare Smith*, 455 U.S. at 215 ("[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."), *and Fulminante*, 499 U.S. at 307–08 (analyzing error of the "trial" type alongside the admissible evidence), *with United States v. Brande*, 329 F.3d 1173, 1176 (9th Cir. 2003) (no hearing required for prosaic misconduct).

Because the jury misconduct below is trial error, we can answer the second question: *Brecht* dictates the court's review of the Nevada Supreme Court's decision. *See Brecht*, 507 U.S. at 623, 638 (providing the standard the state habeas petitioner must satisfy to set aside conviction for federal constitutional error of the "trial type"). *Brecht*'s inquiry is whether the trial error had a "substantial and injurious effect or influence" on the verdict, and relief is proper only if the court has "grave doubt" about whether the error had that effect. *Id.* at 623 (citation omitted); *Davis v. Ayala*, 576 U.S. 257, 267–68 (2015) (citation omitted). The defendant must show the trial error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637. This stringent standard recognizes "the presumption of finality and legality that attaches to" state convictions and that most constitutional errors are harmless. *Id.* at 633 (citation omitted); *Fulminante*, 499 U.S. at 306.

The reviewing court does not summarily ask whether adequate evidence supports the verdict despite the error;

rather, it "quantitatively assesse[s]" the error in the context of the whole case. *Fulminante*, 499 U.S. at 307–08. The state court's historical fact findings are presumed correct. *Rushen*, 464 U.S. at 120. Deep deference is given to findings on the substance of an *ex parte* contact, its effect on a juror, and the credibility of a juror's declaration of impartiality. *Id.*; *Patton*, 476 U.S. at 1036. The court presumes the jury will disregard inadmissible evidence after proper instruction from the court. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

**B.**

Having determined that *Brecht* is the appropriate test for this "trial error," we now address whether the Nevada Supreme Court's decision (1) breaks with *Brecht*, the clearly established Supreme Court precedent on this issue, or (2) was based on an unreasonable determination of the facts considering the record. 28 U.S.C. § 2254(d).

Congress permits habeas relief when a state court breaks with well-settled Supreme Court precedent. *Id.* § 2254(d)(1). Thus, the narrow question before us under the first prong is whether the Nevada Supreme Court's application of *Meyer* violates *Brecht*. The Nevada Supreme Court denied Brown a new trial because he failed to show the juror misconduct prejudiced him. To prevail on a motion for new trial under *Meyer*, the defendant must establish juror misconduct occurred and was prejudicial. *Meyer*, 80 P.3d at 455. While the court presumes prejudice for egregious misconduct, the defendant bears the burden to show that milder misconduct probably affected the verdict. *Id.* at 455–56.

Whether *Meyer* violates clearly established Supreme Court precedent is a question we have already answered. *Von Tobel*, 975 F.3d at 855 (holding *Meyer* does not violate

§ 2254). Indeed, *Meyer* mirrors *Brecht*, as both place the burden to show prejudice for non-egregious errors, *i.e.*, trial error, on the defendant. Accordingly, the trial court complied with clearly established precedent when it (1) held a hearing where Brown could show prejudice and (2) denied Brown a new trial after evaluating the error, as developed at the hearing, in the context of the issues and evidence presented at trial. *See Smith*, 455 U.S. at 215; *Fulminante*, 499 U.S. at 307–08. Relief is not warranted under § 2254(d)(1).

Nor was the Nevada Supreme Court's decision the product of an unreasonable determination of facts based on the record before it. 28 U.S.C. § 2254(d)(2). The trial court made detailed findings, and the Nevada Supreme Court referred to and relied on them. This court presumes the trial court's factual findings are correct, and Brown has not offered clear and convincing evidence suggesting otherwise.

First, what happened on the elevator. The court found the following facts were corroborated: (1) the women hesitated to board the elevator, which held eight jurors; (2) a juror told them it was okay to get on; (3) the friend said she and Gallon were just talking amongst themselves; (4) the friend commented on something Gallon had worn on her head; and (5) only the friend discussed the case, not Gallon. The jurors did not discuss specifics with one another—only that they had been in the elevator with Gallon and her friend. Because the court found "[o]nly one juror recalled the statement about truthfulness and telling the jurors to look at the video," it was "reluctant" to accept Juror #2's uncorroborated statements as true. But even if true, the court found the friend was "[n]ot discussing something [new or] excluded from evidence," instead "commenting on something that was in

the video that everybody else could've seen."[2] The court found Gallon did not intend to interact with the jurors and that it was more the friend "getting in the middle of it."

Next, how the incident affected the jury. The court found the jurors felt uncomfortable in the elevator with Gallon and her friend, who was present in the courtroom at trial, and they "knew something wrong had happened." The court found, however, the conversation's "impact was pretty innocuous" and "didn't really impact them that much."

Lastly, credibility. The court presumed all jurors would testify truthfully and believed every juror who said the incident would not affect their deliberations or verdict. The court found Juror #2, who remembered the most troubling comments, "very credible" and "somebody who had a good -- very detailed memory." The court noted, however, that Juror #2's memory of the comments on Gallon's truthfulness

---

[2] At oral argument, Brown advanced a different reading of Juror #13's testimony than that found by the trial court. He argues three jurors were too tainted to remain on the panel—Juror #2, who recalled the friend emphasizing the video tapes and Gallon's credibility; Juror #4, who recalled only the former; and Juror #13, who agreed when asked if the friend had been "talking about the case" and thought she did so "purposely." In doing so, Brown maintains the trial court's offer to replace two jurors with alternates was insufficient. We cannot agree as to Juror #13. At the hearing, Brown prompted Juror #13 to recall details or agree that the friend discussed veracity and specific evidence. Time and time again, Juror #13 confirmed he recalled nothing specific. His testimony that the friend spoke loudly and purposefully without remembering "exactly what was said" is insufficient to render him prejudiced. Indeed, Juror #13 can hardly be prejudiced by a conversation he "didn't really focus" on and had "forgot[ten] happened" until questioned. Assuming arguendo that removing Jurors #2 and #4 would have been the better part of wisdom, it was Brown's choice to keep them on the panel.

and the importance of videos was uncorroborated and questioned whether she heard the conversation better or had unintentionally embellished her memory.

The court ultimately found the misconduct would not have an impact "beyond a reasonable doubt." The comment about Gallon's head covering—the only corroborated substantive remark—was not so "prejudicial . . . that it really add[ed] anything." The court found the "other evidence that didn't relate to Ms. Gallon, all of the testimony of the witnesses and the victims in the case and the surveillance videos that were shown" sufficient to support the verdict, so the prosecution "didn't even really need to call" Gallon.

The Nevada Supreme Court's summary of these facts— that most jurors did not remember what was said or remembered only the head-covering comment; that the information was vague, cumulative of the surveillance videos, and not relevant to a material issue; and that all jurors stated the misconduct would not affect their deliberations and were properly admonished by the court—is indeed supported by the trial court record. And Brown has failed to offer evidence sufficient to show the juror misconduct prejudiced him. Relief is not warranted under § 2254(d)(2).

Because the Nevada Supreme Court's decision affirming Brown's conviction neither breaks with clearly established Supreme Court precedent nor grounds itself in an unreasonable determination of the facts, habeas relief is not warranted.

**AFFIRMED.**